**In re Arline MILLER, Debtor.**

**Arline MILLER, Plaintiff,**

**v.**

**Lionel WALPIN, Defendant.**

**Bankruptcy No. LA 93–37464–KM. Adv. No. LA 93–03724–KM.**

United States Bankruptcy Court, C.D. California.

April 1, 1994.

---

Donald W. Henry, Chapter 11 Trustee, Wilke & Henry, Woodland Hills, CA.

Byron Z. Moldo, Saltzburg, Ray & Bergman, Los Angeles, CA, for Donald Henry, Chapter 11 Trustee.

Maurice Wainer, Snipper, Wainer & Markoff, Los Angeles, CA, for debtor.

Ivan L. Kallick, McDermott, Will & Emery, Los Angeles, CA, and Peter T. Hermes, Zonni, Ginocchio & Taylor, Glendale, CA, for defendant Lional A. Walpin, M.D.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KATHLEEN P. MARCH, Bankruptcy Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not disputed. Plaintiff Arline Miller and Defendant Lionel Walpin were married on June 30, 1957 and thereafter lived together as husband and wife until January, 1991. Plaintiff Miller filed for divorce. The California Superior Court entered its order dissolving the marital status of Miller and Walpin on January 14, 1993. However, the California Court's January 14, 1993 order did not divide the community property of the Miller and Walpin, and reserved jurisdiction to do so at a later date.

On August 3, 1993, Plaintiff Miller filed a voluntary petition under Chapter 11 of the Bankruptcy Code.[1] As of the date the bankruptcy case was filed, Miller and Walpin's community property had not been divided, either by the California Court or by agreement of the parties, except possibly with respect to two bank accounts.[2]

On September 22, 1993, Plaintiff Miller brought the instant adversary proceeding against Defendant Walpin. The adversary proceeding complaint seeks a declaration from this Court that certain assets and interests are community property and are property of the bankruptcy estate (Complaint, at prayer, paragraph 3, page 3).

Both Plaintiff Miller and Defendant Walpin have filed cross-motions for summary judgment in the instant adversary proceeding, asking this Court to interpret the word "spouse" in 11 U.S.C. § 541(a)(2), and seeking additional relief. Section 541(a)(2) provides that:

"(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: ... (2) *All interests of the debtor and the debtor's spouse in community property as of the commencement of the case* that is—(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the

---

1. 11 U.S.C. §§ 1101–1174.

2. Plaintiff and Defendant had allegedly agreed to divide these two bank accounts by written stipulation before this bankruptcy case was filed. For one bank account there was an agreement, signed by both plaintiff and defendant prepetition. For the other account, defendant Walpin claimed there was a second signed agreement, but only an unsigned copy was provided to this Court.

debtor's spouse, to the extent that such interest is so liable." (emphasis added)

Plaintiff Miller's summary judgment motion asks this Court to rule that the phrase "all interests of the debtor and the debtor's spouse in community property" includes the community property interests of the *former* spouse when, as in this case, the dissolution of the marriage occurred before the bankruptcy was filed, but the community property had *not* been divided before the bankruptcy was filed.

Defendant Walpin's motion for summary judgment asks this Court to rule that the term "all interests of the debtor and the debtor's spouse in community property" only refers to a *present* spouse, and does *not* refer to the former spouse when, as in this case, the dissolution of the marriage occurred before the bankruptcy was filed, but the community property had *not* been divided before the bankruptcy was filed. Defendant Walpin's motion asks this Court to rule that (because the status of the marriage had already been dissolved prepetition), defendant was a "former spouse" on the date the bankruptcy was filed, therefore, Section 541(a)(2) does not apply. The result, Defendant Walpin argues, is that no property came into the estate pursuant to Section 541(a)(2), and Defendant Walpin's interests in community property are *not* property of the bankruptcy estate.

Defendant Walpin's motion is based almost exclusively on the published opinion of another bankruptcy judge in the district, *Gill v. Warranty Escrow Co. (In re LaNess)*, 159 B.R. 916 (Bankr.C.D.Cal.1993), which adopted the restrictive reading of Section 541(a)(2) urged by Defendant Walpin. No one argues that *LaNess*, a bankruptcy court opinion, is binding on anyone. Defendant Walpin argues *LaNess* should be followed by this Court as being well reasoned.

Plaintiff Miller's summary judgment motion also asks this Court to rule that various businesses (a medical practice, and three businesses named "Roloke Co.", "Wishing you Well" and "Pleasing Patients"), real property (unspecified), and personal property (referred to only as scheduled in debtor's petition) were all community property as of the date Plaintiff Miller filed her bankruptcy and thus became property of the bankruptcy estate.

## II. HOLDINGS

■ Plaintiff Miller's interpretation of Section 541(a)(2) is correct, for the reasons discussed infra this Opinion under ANALYSIS. The Court grants summary adjudication in favor of Plaintiff Miller and against Defendant Walpin on the issue of whether the phrase "all interests of the debtor and the debtor's spouse" in Section 541(a)(2) includes community property of the debtor and the debtor's former spouse on the fact pattern here at issue. The Court holds that where, as in the instant case, the dissolution of the marital status occurred before the filing of the bankruptcy case, but the division of the couple's community property had not yet been made at the time the bankruptcy case was filed, "debtor's spouse" in Section 541(a)(2) is broad enough to include "debtor's former spouse". Thus, to the extent that provisions (A) or (B) of Section 541(a)(2) are met in this case, all community property of both Plaintiff Miller and Defendant Walpin became property of the estate pursuant to Section 541(a)(2) when Plaintiff Miller filed her bankruptcy petition.[3]

Because Defendant Walpin's motion for summary judgment asks the Court to rule that none of Defendant's property became property of the estate pursuant to Section 541(a)(2), Defendant Walpin's motion is denied. The narrow interpretation of Section 541(a)(2) set forth by the *LaNess* opinion, and here urged by Defendant Walpin, has never been adopted in any published opinion by the United States Supreme Court, Court of Appeals for the Ninth Circuit, Ninth Circuit Bankruptcy Appellate Panel, or any other court in the United States, so far as the research of the parties and the Court revealed. For the reasons discussed infra this

**3.** The Court does decide whether provisions (A) or (B) of Section 541(a)(2) have been met or not, except as noted infra this Opinion.

opinion, this Court does not find *LaNess* well reasoned, and declines to follow it.

The portion of Plaintiff Miller's motion seeking summary judgment that all the businesses, real property and personal property were community property as of the date of the petition is denied, with one exception. The exception is that the Court grants summary adjudication in favor of Plaintiff Miller and against defendant Walpin holding that the interests that Miller and Walpin had in the businesses Roloke Co., Pleasing Patients and Wishing You Well were community property on the date the bankruptcy case was filed, subject to Plaintiff Miller and Defendant Walpin's claims against the community for contributions made to these three businesses post-separation. These additional holdings also are discussed in detail infra under ANALYSIS.

## III. ANALYSIS

### A. WHETHER 11 U.S.C. § 541(a)(2) APPLIES WHERE MARITAL STATUS HAS BEEN DISSOLVED PREPETITION BUT DIVISION OF COMMUNITY PROPERTY HAS *NOT* OCCURRED PREPETITION

#### 1. *Look at the Language of the Statute, [But Look at All of Section 541]*

■ When interpreting a statute, a court must first look to the language of the statute itself, and if the statute's language is clear, the language of the statute is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms'. *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). However, if the statutory language is unclear, then it is proper to look to the legislative history of the statute to help interpret the statute. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984).

The *LaNess* decision, supra, which Defendant Walpin asks this Court to follow, purports to be a plain language analysis of Section 541(a)(2). The facts of *LaNess* are on point. In *LaNess*, as here, the spouses were

in the process of divorcing at the time the bankruptcy was filed. The status of the marriage had been dissolved by the California Superior Court prepetition, so the couple was divorced. However, the California Superior Court had not divided the couple's community property as of the date one spouse filed bankruptcy.

Though I dislike having to disagree with an esteemed colleague, I cannot agree with *LaNess* because its plain language analysis is not carried out correctly. The reasoning of *LaNess*, in a nutshell, is that Congress did not intend to include "former spouse" when referring to "spouse" in Section 541(a)(2), because Section 541(a)(2) does not state "spouse or former spouse". *LaNess* observes that Congress knew how to say "former spouse" when it wanted to, because in 11 U.S.C. § 523(a)(5)[4], Congress did use the words "former spouse". *LaNess*, 159 B.R. at 918. Based on this reference in Section 523(a)(5), the *LaNess* court concluded that because Congress said "spouse" instead of "spouse or former spouse" in Section 541(a)(2), Section 541(a)(2) does not apply where a spouse has become a former spouse before the petition is filed, even though the community property has not been divided before the petition is filed. *LaNess* held that Section 541(a)(2) does not apply to community property held by the debtor and a "former spouse", where marital status has been dissolved prepetition, but community property has not been divided prepetition. *Id.* at 919. Therefore, the Chapter 7 trustee in *LaNess* had no interest in the former spouse's one-half interest in the sales proceeds of the family residence, despite the fact that the sales proceeds constituted community property. *Id.*

#### 2. *Another Subpart of Section 541(a) Uses "Spouse" in a Broader Sense*

While *LaNess* sought to interpret Section 541 by looking to Section 523, a section of the Bankruptcy Code on nondischargeability (a completely different subject than Section 541 addresses), *LaNess* failed to consider the use of the term "spouse" in another *subsection* of

---

**4.** Section 523(a)(5) provides that debts owed for alimony and child support are nondischargeable.

Section 541, the very section of the Code the *LaNess* opinion was trying to interpret.

In Section 541(a)(5), Congress used the term "spouse" within the following context:

"[a] ... The [bankruptcy] estate is comprised of all the following property, wherever located and by whomever held: 111(5) any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and the debtor acquires or becomes entitled to acquire within 180 days after such date— ... *as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree.*" (emphasis added)

■ Clearly, "property settlement agreements with the debtor's spouse" and "divorce decrees" often involve former spouses. The conclusion to be drawn from the use of "spouse", as opposed to "spouse and former spouse", in Section 541(a)(5), is that with respect to Section 541(a) as a whole, Congress used the term "spouse" in the broader sense of referring to both present and former spouses.

**3.** ***The Legislative History of the Bankruptcy Code Suggests That the Interest of a Former Spouse is to Be Included as Property of the Estate on the Fact Pattern Here at Issue***

**(a)** ***The Use of Term "Spouse" in Section 541(a)(2) is Ambiguous, So It is Proper to Consult the Code's Legislative History***

■ The Bankruptcy Code does not define the term "spouse".[5] As just discussed, the term "spouse" in Section 541(a)(5) is broad enough to include former spouse. In light of these facts, the Court finds that the meaning of "spouse" in Section 541(a)(2) is ambiguous. Because of this ambiguity, it is proper to look at the legislative history of Section 541(a)(2) to determine whether the legislative history

of the Code gives content to the term "spouse".[6]

**(b)** ***Legislative History Suggests a Broader Reading of Term "Spouse" in Section 541(a)(2) is Appropriate***

■ The legislative history of Section 541(a)(2) indicates that the primary purpose of Section 541(a)(2) is to include as property of the estate all community property of the debtor and the debtor's spouse *to the extent that such property is generally liable for the debtor's postnuptial contractual debts and other allowable claims against the debtor.* The legislative history to Section 541 reflects that the Commission set up to recommend revisions to the then applicable Bankruptcy Act recommended that the Bankruptcy Act be modified so that:

"[c]ommunity property of a debtor and his spouse be subject to administration under the Act to the extent such property is generally liable for the debtor's postnuptial contractual debts and other allowable claims against the debtor (other than debts for necessaries or debts incurred by the debtor as an agent for his spouse)."

*July, 1973 Report of the Commission of the Bankruptcy Laws of the United States,* H.R.Doc. No. 137, 93rd Cong., 1st Sess. pt. 1 (1973). Thus, the legislation that became the present Bankruptcy Code intended to make a significant change in what would constitute property of the estate. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977). This change was to include all of the community property of *both* spouses and all the separate property of the debtor as property of the estate available for distribution. Community creditors of *both* the filing spouse and the nonfiling spouse would be permitted to share in the community property by filing claims in the bankruptcy case. *Id.*

As demonstrated by this legislative history, Congress was focusing on the treatment of community property when one of two married spouses in a community property state

---

**5.** The definition of "spouse" is not contained in 11 U.S.C. § 101, 102, 1101, or anywhere else in the Code or Federal Rules of Bankruptcy Procedure.

**6.** The *LaNess* opinion did not consider the legislative history of Section 541(a)(2). Presumably, the court found such an analysis unnecessary because the Court found the term "spouse" to be clear and unambiguous.

files bankruptcy. The legislative history is silent as to whether Congress considered the effect on Section 541(a)(2) when one spouse files a bankruptcy petition after marital status has been dissolved but before the community property has been divided. Thus, the legislative history does not determine conclusively whether Congress intended to include the community property interest of a "former" spouse in a case such as this one.

However, the intent of Congress to bring all community property that may be liable for all community debts into the estate is best effectuated by including the community property interest of a "former" spouse when the community property of the spouses had not been divided as of the bankruptcy petition filing date. Thus, this Court's broader reading of Section 541(a)(2) is consistent with the legislative history of the Code.

4. *Congress's Goal Was to Include as Property of the Bankruptcy Estate All Property Liable for the Community Debts of Both Spouses, Even if Only One Spouse Filed Bankruptcy; and Under California Law, Community Property Remains Liable For Community Debts Until The Property is Divided*

■ The principle discussed immediately supra supports the view that where the division of community property has not yet occurred at the time the bankruptcy is filed, all community property which is liable for community debts should come into the bankruptcy estate.

■ Under California law, the event which terminates liability of community property for community debts as well as debts of the other spouse is *division* of the community property, *not dissolution* of the status of the marriage.

Community property is liable for a debt incurred by either spouse before or during marriage. Cal.Fam.Code Section 910. The judgment of dissolution of marriage merely restores the parties to the state of unmarried

persons. Cal.Fam.Code Section 2300. The dissolution of status has *no effect* on the liability of community property for community debts. It is *division* of community property which cuts off this liability. Upon division of community property, the community property received by spouse "A" ceases to be liable for a debt incurred by spouse "B" before or during marriage, unless the debt incurred by spouse "B" was assigned to spouse "A" as part of the division of the property. Cal.Fam.Code Section 916(a)(2).

Since community property in California remains liable for debts of either spouse up to the date the community property is divided, (and regardless of whether or not there has been a dissolution of status of the marriage) all community property should come into the bankruptcy estate where, as here, the division of the community property has *not* occurred as of the date the bankruptcy case is filed.

5. *Overall Statutory Scheme Supports Finding That the Term "Spouse" Includes Both Current and Former Spouse*

Because the term "spouse" is not defined by the Bankruptcy Code, and is ambiguous as it is used in Section 542(a), it is proper to look at the overall statutory scheme of the Code to help determine what Congress intended. The overall statutory scheme of the Bankruptcy Code reflects an intent to include all community property assets of *both* spouses as property of the estate in order to pay all community debts. First, 11 U.S.C. § 726(c) allows creditors with a community claim to be paid from property of the estate.[7] Moreover, Section 726(c) establishes a "sub-estate" in which the community property is placed. The property in this "sub-estate" is used to pay the community debts first. When the assets in this "sub-estate" are insufficient to pay all community claims of *both* the debtor and the debtor's spouse, then the creditor's claim may be satisfied from other property of the estate. 11 U.S.C. § 726(c).

---

7. "A 'community claim' means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in Section 541(a)(2) is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. § 101(7).

The above distribution scheme is violated if this Court follows the reasoning in *LaNess*. The result under *LaNess* is that only the filing spouse's community property interest becomes property of the estate. This happens pursuant to 11 U.S.C. § 541(a)(1), not pursuant to Section 541(a)(2), because under *LaNess*, Section 541(a)(2) does not apply at all. Because property of the kind specified in Section 541(a)(2) does not exist, Section 726(c) never applies. The practical result is that a special "sub-estate" containing only the community property will not be established for the benefit of community claim holders. All the community debts of both the debtor and the debtor's former spouse will be treated the same as other types of claims in the manner provided by Section 726(a) and (b). Furthermore, although only the *debtor's share* of the community property comes into the bankruptcy estate, this portion of the community property is liable for *all* the community debts of *both* spouses.

### 6. *The Only Other Case on Point Reached the Opposite Result From LaNess*

This incongruous result was also recognized by *In re Hendrick*, 45 B.R. 976 (Bankr. M.D.La.1985). Prior to *LaNess*, *Hendrick* was the only reported decision in the United States which had addressed whether or not all the community property becomes property of the estate pursuant to Section 541(a)(2) when the status of the marriage has been dissolved prepetition but the community property has not been divided by the state court prepetition. The *Hendrick* court held that "termination of the community property regime, absent a partition [of community property], does not change the result; the entire property of the former community becomes property of the estate." *Id.* at 978.

The *Hendrick* court faced similar facts as the ones present in both the instant case and the *LaNess* case. In *Hendrick*, a divorce was granted to the debtor and his wife approximately seven months before the debtor filed his Chapter 11 petition, but, as of the petition date, the community property of the debtor and his former spouse had not been partitioned.

The *Hendrick* court noted that Section 726(c) provides a rational, ordered, nationally uniform set of priorities that includes intricate calculations to take into account separate assets and debts. *Id.* The *Hendrick* court reasoned that if the former spouse's share of the community property, when such property had not been partitioned prior to the filing of the bankruptcy petition, is not included as property of the estate pursuant to Section 541(a)(2), the priority scheme provided by Section 726(c) would be upset. Like this Court, the court in *Hendrick* held that where the spouses were divorced prepetition, but the community property had not yet been divided at the time the bankruptcy case was filed, the community property of both spouses becomes property of the estate.

*Hendrick* relied in part on Louisiana law in reaching this result, just as this Court, as discussed in this Opinion, has looked at applicable California law relating to community property and the definition of "spouse". However, where there is only one pre-existing case on point, it would have been the norm for *LaNess* to at least acknowledge and distinguish that case. Yet, *LaNess* does not even mention *Hendrick*; presumably because the "plain language" approach used by *LaNess* does not require any reference to existing case law.

### 7. *Under California Law "Spouse" Includes Former Spouse*

 Finally, this Court recognizes that under certain circumstances, this Court must look to nonbankruptcy law to determine rights. For example, Section 541(a) defines what property of the debtor are transferred to the estate but it does not address the threshold questions of the existence and scope of property rights. *In re Farmers Market, Inc.*, 792 F.2d 1400 (9th Cir.1986). Thus, to resolve questions of the scope and existence of debtor's interest in a given asset, the courts must refer to nonbankruptcy law. *Id.* Similarly, since "spouse" is not a defined term in the Bankruptcy Code[8] and is ambiguous as used in Section 541(a)(2), the Court may appropriately look to nonbankruptcy law to assist the Court in defining "spouse".

In the context of California family law, the term "spouses" is defined to include former

---

8. The definition of "spouse" is not contained in 11 U.S.C. §§ 101, 102, or 1101.

spouses, as follows: "persons who are lawfully married to each other and persons *who were previously lawfully married to each other.*" Cal.Fam.Code Section 11 (emphasis added). This state law definition of "spouse" is consistent with this Court's broader interpretation of the term "spouse" in Section 541(a)(2).

### 8. *The Reading of Section 541(a)(2) Provided by LaNess Would Create Great Confusion About What Property Comes Into Estate*

In cases, such as the instant one, where the community property had not been divided prior to the bankruptcy filing date, the *LaNess* holding will create tremendous uncertainty about which interests in property become property of the estate and which interests in property do not become property of the estate. The facts in *LaNess* clearly illustrate this point.

In *LaNess,* the Los Angeles Superior Court had not divided the couple's community property before the bankruptcy was filed. However, the bankruptcy Court deciding *LaNess* assumed (apparently due to *stipulation* of the parties) that the division, when it was made in the future, would result in each spouse receiving one-half of the sales proceeds of the residence. The Chapter 7 trustee in *LaNess* apparently had stipulated to this 50/50 calculation. Thus, the *LaNess* bankruptcy Court held that only the filing spouse's one-half interest in the sales proceeds became property of the estate, and the non-filing spouse's one half interest in the sale proceeds was *not* property of the estate.

The problem that the *LaNess* Court did not have to deal with is that community property assets are *not* always divided 50/50. The general rule in California with respect to dividing community property is to accomplish an equal division of the community estate of the parties in an equitable manner. *See* Cal.Fam.Code Section 2552. However, California law also envisions that any particular

asset need not be divided 50/50 and further envisions that there may be circumstances when one spouse may be entitled to more than 50% of the couple's community property. *See e.g.,* Cal.Fam.Code Sections 2601, 2602. Often the court will give one spouse the professional practice, and the other spouse the family home plus equalizing payments. The *LaNess* opinion did not deal with any of these problems.

Since the *LaNess* assumption that all community assets will be divided 50/50 is not correct in all cases, courts cannot follow the *LaNess* approach of assuming that one-half of each community property asset in issue will become property of the estate, and one-half will not.

Once one realizes there is no 50/50 rule, the problem with *LaNess* becomes clear—no one will know on the day of filing, which assets are part of the bankruptcy estate and which are not. Is the community residence property of the estate? What percentage of the residence is property of the estate? Clearly, this result is not workable, and was not intended by Congress. In fact, one of the goals of Congress in enacting Section 542(a)(2) was to eliminate the infinite variations in interpreting debtor's interest in community property that existed under the Bankruptcy Act. H.R.Doc. No. 137, 93rd Cong., 1st Sess. pt. 1 (1973).[9] By enacting Section 541(a)(2), one of Congress' goals was to impose uniformity.

This Court's broader interpretation of the term "spouse" eliminates these uncertainties because all the community property of both spouses becomes property of the estate.

### B. WHETHER ALL PROPERTY ACQUIRED BY PLAINTIFF MILLER AND DEFENDANT WALPIN DURING THEIR MARRIAGE IS COMMUNITY PROPERTY

 Plaintiff Miller's motion for summary judgment also asks the Court to hold

---

9. The Commission found the following to be a problem: "[t]he interest of a debtor in community property has been subject to infinite variations because of the corresponding variety of the state law of community property." H.R.Doc. No. 137, 93rd Cong., 1st Sess. pt. 1 (1973).

 Later in the Commission Report, the Commission states that "[i]n order to deal with the

problems described above, the Commission recommends that: ... (2) [c]ommunity property of a debtor and his spouse be subject to administration under the Act to the extent such property is generally liable for the debtor's postnuptial contractual debts and other allowable claims against the debtor." *Id.*

that various businesses, real property, and personal property were all community property as of the date the bankruptcy was filed. As already noted, the state court had not determined or divided the spouses' community property as of the date the bankruptcy case was filed.

Defendant Walpin disputes Plaintiff Miller's claim that all property acquired during the couple's marriage was community property as of the date Plaintiff Miller filed her bankruptcy petition. However, Defendant Walpin does admit that some of the property was community property.

### 1. *Personal Property of Parties*

Plaintiff Miller asks this Court to find that "all personal property, including bank accounts acquired by the spouses during marriage, as set forth in the attached Schedule "C" was community property. (Pl.'s Mot. Summ.J. at 11). Plaintiff Miller has presented no evidence to help the Court decide whether the personal assets in this case are community or separate property. First, Schedule "C" was not attached to the motion. Second, the Plaintiff's declaration was silent on the issue of personal property. Finally, although Plaintiff Miller asks the Court to declare that all bank accounts acquired during the marriage are community property, the Plaintiff failed to alert the Court to the fact that at least two bank accounts had apparently been divided by the parties in writing prior to the filing of this case. Because material facts at issue remain, the Court denies summary adjudication to Plaintiff Miller on the issue of whether all personal property acquired by Plaintiff Miller and Defendant Walpin is community property or not.

### 2. *Real Properties of Parties*

■ Plaintiff Miller requests the Court to enter summary judgment declaring that all real property is community property. However, Plaintiff Miller has presented no evidence to help this Court decide this issue. Plaintiff Miller did not provide a list of the real properties at issue. Plaintiff's declaration is silent on whether the real properties at issue were acquired during the marriage with community funds or were from other sources. Because material facts at issue remain, the Court denies summary adjudication to Plaintiff Miller on the issue of whether all real properties acquired by Plaintiff Miller and Defendant Walpin is community property or not.

### 3. *Medical Practice*

■ Plaintiff Miller requests the Court to grant summary judgment that the medical practice carried on by Defendant Walpin is community property. Plaintiff Miller provides evidence that the medical practice was started during Plaintiff and Defendant's marriage with funds acquired during Plaintiff and Defendant's marriage. (Pl.'s Summ.J.M. at 16).[10]

■ Defendant Walpin has filed his declaration stating that a gift in the sum of $5,000 from Defendant's Walpin's mother, allegedly made in 1971, was used to open the first medical office. Defendant Walpin's declaration also states that another gift in the sum of $5,000 was made by Defendant Walpin's mother in 1984, which was used to purchase medical equipment, furniture, or other office items. (Def.'s Opp'n at 17). Defendant Walpin also states in his Declaration that the medical practice cannot be community property because Plaintiff Miller is not a licensed physician and therefore, Plaintiff Miller cannot own a medical practice. (Walpin Opp'n at p. 16–17.)

Defendant Walpin is in error in arguing that the medical practice cannot be community property because Plaintiff Miller is not a licensed physician. California Family Code Section 760 provides that except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property. No statutory exception exists for profes-

---

**10.** Defendant filed an evidentiary objection objecting to Plaintiff's entire declaration. The objection was based on the grounds that Plaintiff lacked personal knowledge and the statement contained in the declaration were conclusory.

The Court partially sustained the evidentiary objection by striking all references to the term "community" as being conclusory. This ruling does not rely on any portion of the declaration that has been stricken.

sional businesses.[11] In fact, California courts frequently divide a community law practice or medical practice between spouses upon divorce. *See e.g., In re Kilbourne*, 232 Cal. App.3d 1518, 284 Cal.Rptr. 201 (Ct.App. 1st Dist.1991) (division of law practice). A non-professional spouse has a community property interest in a medical, legal, accounting or other licensed professional business where the services are performed by the licensed spouse during the marriage.

The Court grants summary adjudication against defendant Walpin's contention that Plaintiff Miller cannot have any community property interest in the medical practice because she is not a doctor. However, summary judgment in favor of Plaintiff Miller is denied regarding the medical practice because the (albeit small) factual issue of the two alleged $5,000 gifts remains to be tried.

### 4. *Plaintiff and Defendant's Other Three Businesses*

█ The Plaintiff requests the Court to declare that Plaintiff Miller's and Defendant Walpin's interests in the businesses Roloke, Co., Pleasing Patients and Wishing You Well are community property as of the date the bankruptcy was filed.

Defendant Walpin has offered no evidence to dispute Plaintiff Miller's evidence that these three businesses were started with community funds and operated during the marriage. However, a factual dispute exists with respect to post-separation labor and funds contributed to the businesses. Thus, the Court grants summary adjudication in favor of Plaintiff Miller that Plaintiff Miller's and Defendant Walpin's interests in the businesses Roloke Co., Pleasing Patients and Wishing You Well were all community property as of the date the bankruptcy was filed, subject to the claims of the parties for contributions made to the community post-separation.[12] Per Section 541(a)(2)(B), both Plaintiff Miller's and Defendant Walpin's interests in these three businesses became property of the bankruptcy estate on the date the bankruptcy was filed.

### IV. CONCLUSION

This Court declines to adopt the narrow reading of Section 541(a)(2) used in *LaNess*. "Plain language" analysis of statutes is popular in part because it is so simple. One merely reads the language of the part of the statute in issue and guesses what it means. No tedious research of existing caselaw, legislative history, or overall statutory scheme. No reference to applicable state law concepts. However, the result of this kind of "plain language" analysis, while facile, may not be either sensible or accurate.

This Court finds that the use of the term "spouse" in Section 541(a)(2) is ambiguous. Thus, the Court must look to the language of Section 541 as a whole, the statutory scheme of the Code as a whole, the legislative history to Section 541, plus state law relevant to liability for community debts and the definition of "spouse", to determine what scope Congress intended Section 541(a)(2) to have.

Where the status of marriage has been dissolved prepetition, but the couple's community property has not been divided as of the date the bankruptcy is filed, the reference to "spouse" in Section 541(a)(2) includes the former spouse, so that all community property interest of the debtor and the debtor's former spouse becomes property of the estate on the date the bankruptcy is filed, to the extent allowed by Subsections (A) and (B) of Section 541(a)(2).

This opinion constitutes the Court's Findings of Fact and Conclusions of Law. The Court has prepared an Order consistent with the foregoing.

---

11. Examples of major exceptions include separate property and earnings of a spouse after separation.

12. The Court's ruling does not adjudicate what interests, if any, Kevin Walpin, son of Plaintiff and Defendant, may have in the businesses Wishing You Well and Pleasing Patients.