153 F.3d 1082
 Bankr. L. Rep. P 77,803, 98 Cal. Daily Op. Serv. 6982,
98 Daily Journal D.A.R. 9650,
2 Cal. Bankr. Ct. Rep. 28
In re John R. MANTLE, Debtor.
James A. DUMAS, Jr., Chapter 7 Trustee, Appellant,
v.
Dorothy M. MANTLE, Appellee.
 No. 96-55833.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided Sept. 4, 1998.
 
 Richard Malatt, Dumas & Associates, Los Angeles, California, for appellant.
 John A. Tkach, McMillan & Tkach, Pasadena, California, for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Volinn, Meyers, Ollason, Judges, Presiding. BAP Nos. CC-95-01868-VMeO, LA94-04264-BR.
 Before: BROWNING, BRUNETTI, and FERNANDEZ, Circuit Judges.
 BRUNETTI, Circuit Judge.
 
 INTRODUCTION
 
 1
 Dorothy and John Mantle were married in June of 1985. John filed a petition for dissolution of marriage in October of 1990, and a petition for bankruptcy in July of 1993, before the marriage was dissolved. After John filed for divorce, but before he filed for bankruptcy, the couple sold their community property house. The bankruptcy court determined that the proceeds from the sale of the house were community property and property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(2).[1]
 
 
 2
 The Bankruptcy Appellate Panel ("BAP") reversed and remanded, holding that since Dorothy was entitled to reimbursement for her separate property contribution to the downpayment on the community property house under Cal. Fam.Code § 2640,[2] it was not proper to characterize the entire proceeds from the sale of the house as community property. According to the BAP, the community property which was property of the bankruptcy estate pursuant to § 541(a)(2) included the proceeds from the sale of the community property house, minus the amount owed Dorothy as reimbursement of her separate property.
 
 
 3
 The trustee of the bankruptcy estate now appeals. The sole issue on appeal is whether the escrowed proceeds from the sale of the Mantles' community property house were community property, and therefore property of the bankruptcy estate pursuant to § 541(a)(2). We find that the proceeds were community property, and therefore reverse the BAP.
 
 FACTS
 
 4
 Before marrying John Mantle ("John"), Dorothy Mantle ("Dorothy") owned certain real property in San Fernando, California ("the San Fernando property"). Also before marriage, Dorothy and John filed a joint application for a loan to purchase a house in Canoga Park, California ("the Canoga Park property").
 
 
 5
 Dorothy and John were married in June 1985. In August 1985, Dorothy sold the San Fernando property, for which she received $79,373.76. Dorothy placed these funds into an individual checking account.
 
 
 6
 On September 13, 1985, a deed was recorded transferring the Canoga Park property to John and Dorothy Mantle, "husband and wife as joint tenants." The purchase price of $238,900 was paid with a downpayment of $62,306 from Dorothy's separate bank account and a promissory note in the amount of $175,000 executed jointly and severally by John and Dorothy, and secured by a first deed of trust in the subject property. During the time of their marriage until their separation in June 1990, community property funds from the spouses' respective earnings were used to make payments on the promissory note.
 
 
 7
 There were no written agreements between John and Dorothy "altering, modifying or changing the manner in which title to the [Canoga Park] property is held." Nor, as the parties stipulated, were there any written agreements waiving any right to reimbursement Dorothy might have had for her contribution to the purchase of the house.
 
 
 8
 On October 10, 1990, John filed a petition for dissolution of the marriage. In December 1991, the Canoga Park property was sold and the balance of all the proceeds after payment of debt and costs, $67,295.12, was placed in an escrow account pending further order of the California Superior Court adjudicating the Mantles' divorce.
 
 
 9
 On July 6, 1993, John filed a Chapter 7 bankruptcy petition. At the time of the bankruptcy filing, the court handling the Mantles' divorce had not entered any order or judgment dividing the couple's property, including the escrowed $67,295.12. In November 1994, the bankruptcy trustee initiated an adversary action seeking a declaration that the escrowed proceeds from the sale of the Canoga Park property were property of the bankruptcy estate pursuant to § 541(a)(2).
 
 
 10
 The bankruptcy court entered judgment in favor of the bankruptcy trustee, finding that the house was community property, and that the sale of the house did not change the community character of the property. The BAP also found that the house was community property; neither party contests that finding on appeal. Because no order affecting the nature of the property had been entered by the California Superior Court prior to John's filing of the bankruptcy petition, the bankruptcy court held that the escrowed funds generated by the sale of the house were community property, which became property of the bankruptcy estate at the time of John's bankruptcy filing.
 
 
 11
 The BAP reversed. Citing § 2640, the BAP found that Dorothy retained a "continuing and supervening" separate property interest to the extent of her separate contribution to the purchase of the community property house. Noting that the § 2640 right to reimbursement is absolute absent evidence of a written waiver of the right, the BAP held that Dorothy's separate interest in the escrowed funds was not properly classified as property of the bankruptcy estate under § 541(a)(2). Accordingly, the BAP remanded to the bankruptcy court for determination of the amount of the escrowed funds owed Dorothy pursuant to § 2640, and for entry of an order distributing to Dorothy that amount.
 
 DISCUSSION
 I.
 
 12
 Decisions of the BAP are reviewed de novo. Key Bar Invs., Inc. v. Fischer (In re Fischer), 116 F.3d 388, 390 (9th Cir.1997); Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323, 326 (9th Cir.1994). This court independently reviews the bankruptcy court's rulings on appeal from the BAP. Quarre v. Saylor (In re Saylor), 108 F.3d 219, 220 (9th Cir.1997). The bankruptcy court's conclusions of law are reviewed de novo, and its factual findings are reviewed for clear error. Dominguez v. Miller (In re Dominguez), 51 F.3d 1502, 1506 (9th Cir.1995).
 
 II.
 
 13
 Under the Bankruptcy Code, property of the bankruptcy estate includes:
 
 
 14
 All interests of the debtor and the debtor's spouse in community property as of the commencement of the [bankruptcy] case that is--
 
 
 15
 (A) under the sole, equal, or joint management and control of the debtor; or
 
 
 16
 (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
 
 
 17
 11 U.S.C. § 541(a)(2) (emphasis added). While this provision defines what interests of the debtor must be transferred to the bankruptcy estate, it does not address "the threshold questions of the existence and scope of the debtor's interest in a given asset." State of California v. Farmers Markets, Inc. (In re Farmers Markets, Inc.), 792 F.2d 1400, 1402 (9th Cir.1986). Rather, bankruptcy courts are required to look to state property law, in this case California property law, to determine the property which is to be included in the bankruptcy estate. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).
 
 
 18
 Turning to California law, it is clear that property acquired in joint form during marriage is presumed to be community property. See Cal. Fam.Code §§ 760, 2581.[3] On the other hand, property that is separate at the time of marriage retains its separate character throughout the marriage, even if it is transmuted from one form to another. See Hicks v. Hicks, 211 Cal.App.2d 144, 151, 27 Cal.Rptr. 307 (1962).
 
 
 19
 In the present case, there is no dispute as to the community property nature of the Canoga Park property prior to its sale. Where the disagreement arises is with respect to the characterization of the proceeds received from the sale of the property. John claims that the proceeds retained their community property nature. Dorothy, however, argues that her right to reimbursement under § 2640[4] vested in her a separate property interest in the sale proceeds to the extent of her separate property contribution to the purchase of the community property house.
 
 III.
 
 20
 For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate. In Miller v. Walpin (In re Miller), 167 B.R. 202 (Bankr.C.D.Cal.1994), the California Superior Court had dissolved the marriage, but retained jurisdiction to divide the community property. Before such division occurred, the wife filed for bankruptcy. "Under California law, the event which terminates liability of community property for community debts as well as debts of the other spouse is division of the community property, not dissolution of the status of the marriage." Id. at 208. Thus, the bankruptcy court held that all community property of the divorcing couple was property of the bankruptcy estate where division of the community property had not occurred as of the date the bankruptcy was filed.
 
 
 21
 We agree that under California law, division of property is the event that will sever the liability of community property for community debts, and, until division, all community property of the divorcing couple is property of the bankruptcy estate pursuant to § 541(a)(2). Because, in the present case, there is no evidence that the superior court adjudicating the Mantles' divorce had entered any order dividing their property, the proceeds from the sale of the community property house remained community property, and therefore should have been considered property of the bankruptcy estate. The present case can thus be distinguished from Keller v. Keller (In re Keller), 185 B.R. 796 (B.A.P. 9th Cir.1995), wherein the bankruptcy petition was filed after a final divorce judgment had been entered by the Superior Court for Orange County, California.
 
 IV.
 
 22
 In reaching the above conclusion, we reject the BAP's interpretation of § 2640 as creating a continuing and supervening separate property interest, beyond the community interest, to the extent of the separate funds invested in the community property.
 
 
 23
 The California Supreme Court addressed the scope of the § 2640 right to reimbursement in Fabian v. Fabian (In re Marriage of Fabian), 41 Cal.3d 440, 224 Cal.Rptr. 333, 715 P.2d 253 (1986). There, the husband had used $275,000 of his separate property to purchase a hotel shortly after he was married. Title was taken in the form of community property. The court held that the hotel was community property, and the husband was not entitled to reimbursement. The court stated, however, that had Cal. Civ.Code § 4800.2 [the predecessor statute to § 2640] been applicable, the husband would have been entitled to reimbursement for his separate property contributions to the community property assets upon dissolution. Fabian, 41 Cal.3d at 447-48, 224 Cal.Rptr. 333, 715 P.2d 253. "Under the new law [section 4800.2] no agreement is needed: the tables are turned so that the separate property interest is now preserved unless the right to reimbursement is waived in writing." Id. at 450, 224 Cal.Rptr. at 339, 715 P.2d at 259 (emphasis added); see also Witt v. Witt (In re Marriage of Witt), 197 Cal.App.3d 103, 105, 242 Cal.Rptr. 646 (1987) (holding that "when a spouse has given separate property to the marital community, section [2640] preserves to the contributing spouse the equity value of his or her separate property contribution unless that retained interest is waived...."). There is no contention that Dorothy ever waived her rights under § 2640, nor is there a contention that Dorothy has not been able to trace her contribution to a separate property source.
 
 
 24
 Here, the BAP seized upon the "preserved interest" language in the above-cited cases in holding that Dorothy's § 2640 right to reimbursement had vested into a separate property interest prior to final adjudication by the superior court. The BAP based its holding in part upon the finding that the house was sold pursuant to a court order. We find no evidence in the record that the superior court had ordered the sale of the house, although a court order was granted preventing either party from accessing the proceeds from the sale. The failure to find such evidence is immaterial, however, to our decision.
 
 
 25
 While we acknowledge that cases such as Fabian and Witt interpret § 2640 as creating a substantive property right, namely, the right to reimbursement, no California case holds that the operation of § 2640 may result in the transmutation of community property into separate property prior to division by the state court. Further, California law clearly does not allow one to claim that community property is separate property simply because one can trace its source to separate property. See Hogoboom and King, Cal. Practice Guide: Family Law, 8:427 at 8-105 (1995).
 
 V.
 
 26
 The Mantles' Canoga Park property was community property. When the property was sold, the proceeds from the sale remained community property. Because the superior court had not yet divided the property at the commencement of the bankruptcy proceedings, the escrowed community property funds became property of the bankruptcy estate. Although Dorothy retains her § 2640 right to reimbursement for her separate property contribution to the community property, this separate property interest does not render the sale proceeds her separate property prior to division by the superior court. Therefore, the bankruptcy court was correct in holding that the proceeds must be classified as property of the bankruptcy estate pursuant to § 541(a)(2).
 
 
 27
 The BAP opinion is REVERSED.
 
 
 28
 REVERSED.
 
 
 
 [1]
 All citations hereinafter to " § 541(a)(2)" refer to that section of the Bankruptcy Code, Title 11 of the United States Code
 
 
 [2]
 All citations hereinafter to " § 2640" refer to that section of the California Family Code
 
 
 [3]
 Cal. Fam.Code § 760 provides:
 Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property.
 Cal. Fam.Code § 2581 provides:
 For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following:
 (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property.
 (b) Proof that the parties have made a written agreement that the property is separate property.
 
 
 [4]
 Section 2640 provides, in pertinent part:
 (a)"Contributions to the acquisition of the property," as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property....
 (b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source.