**In re Margaret WHITUS, Debtor.**

**Bankruptcy No. 96–31833–LK.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

Oct. 8, 1999.

Joseph A. Pitzinger, III, Dallas, TX, for U.S.

Nelson Paul Smith, Leslie & Smith, P.C., El Paso, TX, for Debtor.

### MEMORANDUM OPINION REGARDING DEBTOR'S OBJECTION TO PROOF OF CLAIM FILED BY THE INTERNAL REVENUE SERVICE

LEIF M. CLARK, Bankruptcy Judge.

Came on for hearing the Debtor's Objection to Proof of Claim filed by the Internal Revenue Service. The parties requested that the court determine the secured and unsecured, priority status of the Internal Revenue Service claim in this case. On consideration of the briefs and pleadings submitted by the parties, the arguments of counsel, applicable case law and statutory authority, and the facts of this case, the court now issues this decision and order.

*Background Facts*

Margaret Whitus filed her Chapter 13 bankruptcy case on October 1, 1996. Her spouse, J.B. Whitus, Jr., did not file. The Internal Revenue Service assessed 100% penalty taxes against J.B. Whitus as a responsible person pursuant to 26 U.S.C. § 6672, in connection with 941 employment tax liabilities incurred by several business ventures. The evidence indicates that the Service also has a lien against the homestead of Mr. and Mrs. Whitus. Margaret Whitus is not directly liable for these taxes nor was any assessment made against her. Nonetheless, the Internal Revenue Service filed a proof of claim in her case, on the basis that there is community property in the bankruptcy estate to which its tax lien should attach. The Debtor and her spouse own a homestead with approximately 70% equity, which the parties characterize as joint management community property. The Internal Revenue Service believes

that it may also reach at least a portion of the Debtor's post-petition income.

## Discussion

### I. Does the Service have a claim in this bankruptcy case?

■ "Community claim", as defined in the Bankruptcy Code[1], provides creditors holding claims against the debtor or against a nondebtor the opportunity to participate in distribution out of the bankruptcy estate, if state law would have allowed recovery from community property assets. "By granting the nondebtor's creditors the status of community claim holders, section 101 insures that community property passing to the estate will be divided ratably among all creditors who could have satisfied their claims therefrom under state law." COLLIER ON BANKRUPTCY, ¶ 101.07[1] (15th ed.rev.1997); *See also In re Miller*, 167 B.R. 202 (Bankr.C.D.Cal. 1994). As a result, a creditor of the non-debtor spouse who would have been able to satisfy a claim prior to bankruptcy from community assets holds a "community claim" against the debtor's estate, regardless whether section 541(a)(2) property has actually passed to the estate as of the petition date.[2] *Grimm v. Grimm*, 82 B.R. 989 (Bankr.W.D.Wis.1988); COLLIER ON BANKRUPTCY, ¶ 101.07[1] (15th ed.rev.1997).

■ If under any circumstances a creditor could satisfy a portion of its claim from community property of the type described in section 541(a)(2)[3], then that creditor would be accorded the status of a holder of a community claim. State law provisions limiting a creditor to only certain kinds of community property are not acknowledged under the Bankruptcy Code. COLLIER ON BANKRUPTCY, ¶ 101.07[2] (15 ed. rev.1997). Thus, an entity that holds a claim against a non-debtor spouse enforceable against any kind of community property will, under the Bankruptcy Code, hold a claim against **all** the community property in the debtor's estate regardless state law limitations (subject to the limitations of § 726(c), discussed *infra*.). By the same token, however, the holder of a community claim does not hold a general claim payable out of the entire estate assets. The claim is limited to satisfaction out of the community property. COLLIER ON BANKRUPTCY, ¶ 101.07[1] (15 ed. rev.1997)

■ The IRS has asserted an interest in the homestead, and there is little dispute that this lien is both enforceable and capable of surviving the bankruptcy. The IRS in this case, however, wants more. It wants payment from the Debtor's post-petition income as well. Does the IRS have a community claim assertable against Mrs. Whitus' post-petition income? To put it another way, would the IRS, outside of bankruptcy, have any right to garnish Mrs.

1. The Bankruptcy Code defines community claim as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of [the Bankruptcy Code] is liable, whether or not there is any such property at the time of the commencement of the case." 11 U.S.C. Section 101(7).

2. According to Collier, "The language 'whether or not there is any such property at the time of the commencement of the case' in section 101( ) will be meaningless in almost all cases. If no community property has passed to the estate, section 726(c) does not direct that sub-estates be established for distribution purposes. Therefore, the distribution would take place under sections 726(a) and (b), thus excluding the other spouse's creditors…. The language is meaningful,

however, if voidable transfers retain their separate or community property nature…. The language is also meaningful when chapter 13 earnings are included as assets of the estate." COLLIER ON BANKRUPTCY, ¶ 101.07, FN 11 (15th ed.rev.1997)

3. Section 541(a)(2) of the Bankruptcy Code defines property of the bankruptcy estate as "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the debtor or liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. § 541(a)(2).

Whitus' income? The Fifth Circuit has previously ruled on the extent to which the Internal Revenue Service can reach the earnings of both a Texas taxpayer and the taxpayer's spouse. In *In re Medaris v. United States,* 884 F.2d 832 (5th Cir.1989), Michael Medaris owed tax obligations to the United States government; his wife, Karleen, did not. The Internal Revenue Service levied on all of Michael's income and upon one half of Karleen's income. The Fifth Circuit endorsed this treatment in its opinion, discussing both Texas and federal law relating to the issue.

The court acknowledged Texas law which provides that, generally, a spouse's earnings, characterized as "sole management community property," are exempt from the other spouse's creditors, *see* TEX. FAM.CODE ANN. § 3.102 and § 3.202 [4] (Vernon 1997), and that Karleen's income, under Texas law, would have been protected from creditors of Michael. However, the Fifth Circuit further noted that the Supreme Court, construing Section 6334(c) of the Internal Revenue Code, had already held that state law *exemptions* are not effective against the United States. *In re Medaris v. United States,* 884 F.2d 832 (5th Cir.1989) (Although "state law creates legal interests ... the federal statute determines when and how they shall be taxed"). Thus, because section 6334(a) of the Internal Revenue Code specifically controls what property is exempt from levy, any state law provision purporting to shield certain kinds of property from levy is trumped by the federal enactment. *In re Medaris v. United States,* 884 F.2d 832 (5th Cir.1989); *United States v. Mitchell,* 403 U.S. 190, 204, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). The court was not concerned that the Texas Family Code provision is not specifically denominated as an exemption. It was enough that it functions like one. *Id.* at 834. "The right of the United States to enforce its liens does not depend upon state laws which regulate the rights of creditors generally and does not depend upon whether the "exemption" label is attached to the particular statute in question." *In re Broday v. United States,* 455 F.2d 1097, 1101 (5th Cir.1972) [5] The court concluded that the Internal Revenue Service was able to attach Karleen's income (which was sole management community property) to the extent of Michael's interest in that income.

*Medaris* compels the conclusion that Mrs. Whitus' earnings would be subject to the claim of the Internal Revenue Service outside bankruptcy. Thus, the IRS holds a "community claim" in the bankruptcy case.[6] Her income is, under Texas law,

---

4. Section 3.102 of the Texas Family Code provides, with respect to such property, that each spouse has sole management, control and disposition of the community property that he or she would have owned if single, including personal earnings. Section 3.202 of the Texas Family Code provides: "Unless both spouses are personally liable as provided by this subchapter, the community property subject to a spouse's sole management, control, and disposition is not subject to any liabilities that the other spouse incurred before marriage or any nontortious liabilities that the other spouse incurs during marriage." TEX.FAM.CODE ANN. §§ 3.102, 3.202 (Vernon 1997)

5. The taxpayer argued that the statute gave a property right which transcends the federal tax law. The Fifth Circuit found that Internal Revenue Code § 6321 requires only "that the interest be 'property' or 'rights to property.' It is of no statutory moment how extensive may be those rights under state law, or what restrictions exist on the enjoyment of those rights." *Broday,* 455 F.2d at 1101. The Fifth Circuit repeated that holding in *Medaris* by finding that the "exemption" in Section 5.61 of the Texas Family Code (the predecessor to TFC 3.202) is ineffective against the federal government. *Medaris,* 884 F.2d 832, 834.

6. This analysis demonstrates that the IRS is a creditor of the estate solely by virtue of its ability to reach Debtor's income. *See* Collier, Para. 101.07, FN. 11. The IRS argued at the hearing in a somewhat more indirect—but equally correct—fashion, as follows: The IRS has a lien on the Debtor's homestead, valid under federal law. 26 U.S.C. § 6321. The homestead is community property. The homestead is property of the estate (even though its exempt). *See, Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *In re Reed,* 184 B.R. 733 (Bankr.

sole management community property. Under *Medaris*, the IRS therefore has a claim against half of that community property, notwithstanding TEXAS FAMILY CODE § 3.202, because the federal tax law preempts state law. *See Mitchell, supra.* Because the IRS, under *Medaris*, has a community claim, it has a claim against the Debtor's bankruptcy estate under Section 101(7).

## II. What distribution must the IRS claim receive in this Chapter 13 plan?

Having established that the Internal Revenue Service has a community claim, what must the plan say about the IRS' claim? Most importantly, will Mrs. Whitus have to devote part of her post-petition income (in the form of plan payments) to pay Mr. Whitus' unpaid taxes?

■ At the outset, we need to reject the Debtor's contention that the community claim of the IRS is "non-recourse," i.e. limited to the extent of collateral securing its lien (the homestead). By virtue of *Medaris*, the IRS claim reaches beyond the property which secures the lien. *Medaris* confirms that the IRS has a direct recourse claim, enforceable against community property, lien or no lien. The IRS could choose, outside of bankruptcy, to foreclose on the homestead. Or, it could garnish Mrs. Whitus' wages. Or it could do both. Clearly, the IRS claim is not limited to (or by) the value of the homestead.

■ While it is thus clear that the IRS has a recourse, unsecured community claim,[7] it remains now for us to determine how (and how much) that claim should be paid in Mrs. Whitus' plan. The IRS claims that once it has its nose under the tent, we must admit the entire camel. Once it has a community claim, the IRS thinks it has a general claim, payable on a par with other general claims. Indeed, they intimate that they have a **priority** claim (it is a very large, obnoxious camel).

However, all claims in chapter 13 are limited in their recovery by the terms of the plan—and section 1325(a) states that a claimant may be limited in its recovery to what it could receive in a chapter 7 case. The Code provides special treatment for community claims in chapter 7 cases, in effect creating a sub-estate for their satisfaction.

Sub-estates are created in Section 726(c), consisting only of section 541(a)(2) property (*i.e.*, community property subject to community claims). Community claims—even community claims that would otherwise fit within the rubric of section 507 as priority claims—must look solely to the subestates (and distribution scheme) set up by section 726(c). 11 U.S.C. § 726(c)(2).[8] There are four subestates set up under section 726(c)(2), but community claims assertable against the non-debtor are restricted to recoveries out of the first and last subestates only. The last estate, being residual, might well be empty because the other subestates may (and usually will) be exhausted by satisfying other claims.

1995); *In re Szekely*, 936 F.2d 897 (7th Cir. 1991); *In re Euber*, 217 B.R. 448 (Bankr.D.Vt. 1998); *In re Alsberg*, 161 B.R. 680 (9th Cir. BAP 1993). Therefore, the IRS has a community claim against the estate. The problem with the IRS approach is that it is not so intuitively obvious that the IRS could have an *unsecured* claim against the Debtor's post-petition income. Our approach fixes that problem.

7. In bankruptcy, by virtue of § 506(a), the IRS may actually be forced to liquidate its claim into its secured and unsecured compo

nents. Thus, the unsecured claim of the IRS in this case will be **net** of the value of its collateral interest in the homestead.

8. The statute reads as follows: "Allowed claims ... shall be paid in the order specified in subsection (a) of this section, and, with respect to claims of a kind specified in a particular paragraph of section 507 of this title, in the following order and manner:" 11 U.S.C. § 726(c)(2). Thus, even priority claims are first subject to the limitations on distribution created by section 726(c)(2) and its subsections.

The first sub-estate pays all community claims—including community claims assertable against the non-debtor spouse. The subestate consists only of Section 541(a)(2) property excluding property that is solely liable for debts of the debtor. 11 U.S.C. § 726(c)(2)(A).[9] The second subestate pays only community claims assertable against the debtor, to the extent not already satisfied out of the first subestate. The second subestate contains the section 541(a)(2) property that was excluded from the first subestate, *i.e.*, section 541(a)(2) property that is solely liable for debts of the debtor. 11 U.S.C. § 726(c)(2)(B). If the community claim is assertable against the non-debtor, it does not get to participate in this second tranche of property. The third subestate pays community claims assertable against only the debtor (and *not* the nondebtor spouse), to the extent not already paid from the first two subestates. This third subestate consists solely of *non-community* property. 11 U.S.C. § 726(c)(2)(C). Finally, the residual subestate permits community claims assertable against the nondebtor spouse to re-enter the distribution, permitting recovery out of the general assets of the estate, if there are any left. Thus, only after exhausting community property in the estate may community claimholders then look to "all remaining property of the estate." *In re Miller*, 167 B.R. 202 (Bankr. C.D.Cal.1994). Community claimholders whose claims are assertable against the nonfiling spouse must, after sharing with everyone else from the first subestate, then wait patiently on the sidelines while everyone else's claims are paid from the other two subestates, hoping that, at the end of the day, there will be something left. Usually there is not. And the community claimholders whose claims are assertable against the nonfiling spouse are relegated to this position even if they

would be classified as priority under section 507 (the camel sleeps outside)!

In a Chapter 7 liquidation, Mrs. Whitus' earnings would not be property of the bankruptcy estate and would not be available for distribution. Section 541(a)(6) excludes from the bankruptcy estate earnings from services performed by an individual debtor after the commencement of the case. Section 1306, which includes earnings as property of the estate in Chapter 13, does not apply in a Chapter 7 proceeding. Also, the homestead cannot be liquidated in a Chapter 7 proceeding, and so is not available in calculating the required distribution pursuant to Section 1325(a)(4). Thus, in a Chapter 7 liquidation on our facts, the IRS community claim would receive nothing. Other unsecured creditors, on the other hand, could conceivably receive a distribution, because the liquidation test applied to them is 726(a), not (c)—they are not channeled to a subestate.

In Chapter 13, Mrs. Whitus' plan can legitimately place all community claims into a separate class, for treatment consistent with the best interest of creditor's test 11 U.S.C. Section 1325(a)(4). It is also legitimate for the class of community claims to receive nothing under the plan, because that is the result of the application of the best interest of creditor's test. *203 North LaSalle Street Ltd. Partnership*, 190 B.R. 567, 586 (Bankr.N.D.Ill.1995), *aff'd* 126 F.3d 955 (7th Cir.1997), *rev'd on other grounds* 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

*Conclusion*

Having reviewed both the Bankruptcy Code and Family Code provisions and the relevant caselaw and commentary, the court arrives at the conclusion that the Service cannot compel Mrs. Whitus to provide for a distribution to it in her Chapter 13 plan. The Debtor's Objection to the

---

9. In most Texas cases, it is worth noting that sole management community property will not be included in this first tranche of property, because of the operation of section 3.202 of the Texas Family Code. The only exception will be the IRS, because of *Medaris*, discussed *supra*.

Claim of the Internal Revenue Service is sustained.