**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-30965

IN THE MATTER OF: GERALD M ROBERTSON, Debtor
------------------------------------------------

POLLY ANDERSON,

Appellant,

VERSUS

JOHN CLIFTON CONINE; FLEET MORTGAGE CORPORATION; UNITED STATES
INTERNAL REVENUE SERVICE; GERALD M ROBERTSON,

Appellees.

Appeal from the United States District Court
for the Western District of Louisiana

February 11, 2000

Before JONES and DENNIS, Circuit Judges, and PRADO,* District
Judge.

DENNIS, Circuit Judge:

     This is an appeal by the non-debtor former spouse of the
debtor from the judgment by the United States District Court for

---

     *District Judge of the Western District of Texas, sitting by
designation.

the Western District of Louisiana affirming a partial summary judgment by the Bankruptcy Court. In its partial summary judgment the bankruptcy court held that the Trustee in bankruptcy could treat the former marital home as property of the bankruptcy estate, rather than as the separate property of the former spouse. The appeal by the non-debtor former spouse raises these issues: (1) whether real property received by the debtor's former spouse in a partition of former community property before the commencement of the bankruptcy case is property of the bankruptcy estate under § 541(a)(2) of the Bankruptcy Code, or, alternatively, (2) whether the Trustee may avoid the partition under section 544(a)(3) as a transfer which would be voidable by a hypothetical purchaser of real property from the debtor at the time of the commencement of the case. Upon the facts established for purposes of the partial summary judgment, we decide both questions in favor of the non-debtor former spouse, reverse the judgments of the district and bankruptcy courts, and remand the case to the district court for further proceedings.

I.

Gerald Robertson ("Debtor") and Polly Anderson ("Anderson") were married in February 1985. They acquired a family residence in Ouachita Parish, Louisiana, as their community property in 1989. Fleet Mortgage Company ("Fleet") held a mortgage on the community property home. The couple were divorced in January 1994 and the

divorce judgment was filed in the Ouachita Parish, Louisiana conveyance records. They entered into a voluntary partition, with court approval, in the form of a consent judgment by the Louisiana Fourth Judicial District Court in Ouachita Parish, Louisiana in February of 1994. In the partition, Anderson acquired the former family residence as her separate property and assumed all liabilities with respect to the home, including the Fleet mortgage debt and tax liens in favor of the United States Internal Revenue Service and the State of Louisiana Department of Revenue and Taxation. The consent judgment evidencing their voluntary partition was rendered and recorded in the state district court. The partition judgment was not filed for registry in the conveyance records of Ouachita Parish.

In June 1996 Debtor filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. John Clifton Conine ("Trustee") was named trustee of the Debtor's bankruptcy estate. In August 1997 Trustee filed a complaint to sell the former family residence as property of the estate pursuant to 11 U.S.C. § 363. In October 1997 Fleet filed a motion for relief from automatic stay under its rights as the holder of the mortgage on the home. Anderson opposed the Trustee's complaint and subsequent motion for partial summary judgment. In February 1998, the bankruptcy court for Western District of Louisiana entered a partial summary judgment for Trustee, holding that the home was properly included in the bankruptcy estate of Debtor and that Trustee would be

3

permitted to sell the property and distribute the net proceeds according to the interest of the Debtor and Anderson. Anderson timely filed an appeal in the District Court for the Western District of Louisiana, which affirmed the decision of the Bankruptcy Court in July 1998. Anderson timely appealed to this court.

## II.

We review summary judgments de novo, applying the same standards applied by the district court. *See Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir.1994).

## A.

Section 541 of the Bankruptcy Code defines the property of the estate, in pertinent part, as follows:

    (a)  The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

* * *

        (2)  All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is –

* * *

            (B)  liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

4

11 U.S.C. § 541(a)(2)(B).  Although section 541(a)(2)(B) states that the property of the bankruptcy estate includes all interests of the debtor and the debtor's spouse in community property as of the commencement of the bankruptcy case, neither that section nor any other Bankruptcy Code provision sets forth the criteria for determining  whether a particular asset is community property, or, if so, whether the debtor and the debtor's spouse have interests in such property.  "The term 'community property' is not defined in the Code, but clearly is used as a term of art referring to that certain means of holding marital property in those states which have adopted a community property system."  5 COLLIER ON BANKRUPTCY ¶ 541.13[1], 541-76, n.l (15th ed. 1999) (hereinafter COLLIER) (citing *Johnson v. Fisher (In re Fisher)*, 67 B.R. 666, 668 (Bankr. D. Colo. 1986)).  Generally, Congress has left the creation and definition of property interests of a debtor's bankruptcy estate to state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979).  The Court in *Butner* stated:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy'.

440 U.S. at 55 (*quoting Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 (1961)).  This Circuit has interpreted *Butner* to

5

extend deference to state law whenever Congress has the authority to regulate an area under its bankruptcy powers but has chosen not to do so. *See In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir. 1986). The ultimate characterization of property as either community or separate is determined by applicable state law, and that determination establishes what interest, if any, the bankruptcy estate has in the property. *See* COLLIER ¶ 541.13[2] at 541-78 (citing *Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1084 (9th Cir. 1998); *F.D.I.C. v. Soderling (In re Soderling)*, 998 F.2d 730, 733 (9th Cir. 1993)).

Under Louisiana law, unless spouses provide otherwise by matrimonial agreement, the legal regime of community of acquets and gains applies to them. LA. CIV. CODE ANN. arts. 2327 – 2329 (West 1985). Principally, the community property comprises any property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse. LA. CIV. CODE ANN. art. 2338 (West 1985). During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or in part. In such a case, the things that each spouse acquires are separate property. LA. CIV. CODE ANN. art. 2336 (West 1985).

The legal regime of community property is terminated by the death or judgment or declaration of death of a spouse, declaration of nullity of the marriage, judgment of divorce or separation of

6

property, or matrimonial agreement that terminates the community. LA. CIV. CODE ANN. art. 2365 (West 1985). After the termination of the community property regime by a cause other than death or judicial declaration of death of a spouse, articles 2369.2 – 2369.8 apply to former community property until a partition of the former community property or the death or judgment of declaration of death of a spouse. LA. CIV. CODE ANN. art. 2369.1 (West 1999); *see also* Katherine S. Spaht, *Co-Ownership of Former Community Property: A Primer on the New Law*, 56 LA.L.REV. 677 (1996).

The term "spouse" in articles 2369.1 – 2369.8 includes co-owners of former community property who continue to be married spouses and former spouses holding former community property in co-ownership until it is partitioned. LA. CIV. CODE ANN. art. 2369.1 Comment (d) (West 1999). Upon the termination of the community without a partition of the community property, each spouse owns an undivided one-half interest in former community property and its fruits and products. LA. CIV. CODE ANN. art. 2369.2 (West 1999). A spouse has a duty to preserve and to manage prudently former community property under his or her control. LA. CIV. CODE ANN. art. 2369.3 (West 1999). Spouses may partition former community property by agreement or judicially, just as may ordinary co-owners. LA. CIV. CODE ANN. art. 2369.8 Comment (b) (West 1999); *see also* LA CIV. CODE ANN. arts. 809; 2336 (West 1985). When spouses are unable to agree on a partition of community property or former

7

community property, either spouse may institute a proceeding under Louisiana Revised Statutes section 9:2801 for a judicial partition. LA. CIV. CODE ANN. art. 2369.8 (West 1999).

The partition of the former community property between the former spouses has these effects: (1) the spouses cease to be co-owners of the former community property; (2) the former community assets are divided into separate portions or lots; (3) each former spouse becomes the exclusive owner of a separate portion or lot of the divided assets; and (4) the assets of which each former spouse acquires sole ownership is reclassified by law as the separate, exclusive property of that former spouse. *See* LA. CIV. CODE ANN. arts. 1382, 2335, 2336, 2341, 2369.1 (West 1999); LA.R.S. § 9:2801; MARCEL PLANIOL, 1 TRAITE ELEMENTAIRE DE DROIT CIVIL § 2498 (La. State Law Institute trans., 12th Ed. 1939); MARCEL PLANIOL, 3 TRAITE ELEMENTAIRE DE DROIT CIVIL §§ 1332-1336, 2367-2410 (La. State Law Institute trans., 11th Ed. 1938); AUBRY AND RAU, 4 DROIT CIVIL FRANCAIS § 625 (Carlos E. Lazarus trans., 6th Ed. 1953); *see generally* KATHERINE S. SPAHT & W. LEE HARGRAVE, 16 LOUISIANA CIVIL LAW TREATISE: MATRIMONIAL REGIMES §§ 7.1-7.31 (2nd Ed. 1997)(hereinafter SPAHT AND HARGRAVE).

Prior to the commencement of the present bankruptcy case, the community property regime was terminated, the former community property was partitioned, Anderson received the former family home from the partition as her separate property, and that asset ceased to be either community or former community property. A final

8

judgment of divorce was entered in January 1994, dissolving the community but not partitioning the former community property. The judgment of divorce was recorded in the Ouachita Parish, Louisiana conveyance records in January 1994. In February 1994, a consent judgment was recited into the record of the court partitioning the former community property between Debtor and Anderson. Under Louisiana law, a consent judgment agreed upon by the mutual consent of the parties and approved by the court is a valid and enforceable judgment. La. Civ. Code Ann. art. 3071, 3078; *see Adams v. Adams*, 529 So.2d 877 (La.App. 4th Cir. 1988) (citing *Felder v. Georgia Pacific Corp.*, 405 So.2d 521 (La. 1981)); *In re Stouder*, 164 B.R. 59, 63 (E.D.La. 1994) ("[t]he consent judgment partitioned the proceeds of the sale of the former community residence . . . [i]t is binding between the parties and enforceable as a partition of . . . the community property."). The consent judgment recited into the record of the court therefore acted to partition the former community property between Anderson and Debtor, thus ending the former spouses co-ownership of the former community property, removing it from the former community property regime and causing the partitioned property to become the separate property of the spouses. *See Crais v. Crais*, 737 So.2d 785 (La.App. 4th Cir. 1999); *see generally* 59A Am.Jur.2d *Partition* § 143 (1987). Thus, under the plain meaning of section 541(a)(2), Anderson's partitioned,

separate property could not be included in Debtor's bankrupt estate as it was not community property at the commencement of the case.

The Trustee does not seriously dispute the conclusion that the partition vested the Debtor's former spouse with total separate ownership of her home prior to the petition date. He argues, however, that under Civil Code article 2357 Anderson's separate property home remains subject to debts which she incurred jointly with her former spouse during the community property regime, and that section 541(a)(2)(B) has the effect of making all property liable for such debts part of the bankruptcy estate. Article 2357, in pertinent part, provides that "[a]n obligation incurred by a spouse before or during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation." Thus, a creditor's right under state law to have such an obligation satisfied from her separate property under Article 2357 is not affected by the partition. *See also* La.R.S. § 9:2801(c). It does not follow, however, that separate property of the non-debtor spouse passes to the bankruptcy estate under section 541(a)(2) simply because it is subject to a pre-termination community creditor's claim under state law.

According to the relevant court decisions we have found, "community property" as used to define property of the estate in section 541(a)(2) includes community property and former community

property that has not been partitioned as of the petition date but does not include former community property which has been divided and reclassified as separate property by state law before that date. Courts addressing the issue have held that community property which has not been legally divided as of the commencement of the bankruptcy case passes to the debtor's estate.[1] *See In re Mantle*, 153 F.3d at 1085 (9th Cir. 1998) (citing *Keller v. Keller (In re Keller)*, 185 B.R. 796 (B.A.P. 9th Cir.1995)); *McCoy v. Bank of America (In re McCoy)*, 111 B.R. 276 (B.A.P. 9th Cir. 1983); *Miller v. Walpin (In re Miller)*, 167 B.R. 202 (Bankr. C.D.Cal. 1994); *In re Hendrick*, 45 B.R. 976, 983-984 (Bankr. M.D.La.1985). It necessarily follows that community property which has been finally partitioned and reclassified as separate property of the Debtor's former spouse before the petition date does not become part of the estate. *See Paderewski v. Barrett (In re Paderewski)*, 564 F.2d 1353 (9th Cir. 1977); *In re Keller,* 185 B.R. at 800; *In re Stouder*, 164 B.R. 59, 64 (E.D.La.1994); COLLIER, ¶ 541.13[4] at 541-82 ("In instances where the community property has not been divided

---

[1]One bankruptcy court has held that property of a <u>former</u> spouse, may not be included in the debtor spouse's bankrupt estate even if it is undivided as of the date of the petition. *See In re LaNess*, 159 B.R. 916 (Bankr. C.D.Cal. 1993). This decision has been criticized. *See In re Miller*, 167 B.R. at 208. We need not concern ourselves with the merits or demerits of *LaNess*, however, because we have concluded that partition of former community property before the bankruptcy petition date prevents inclusion within the bankrupt estate of the separate property received by partition by the non-debtor spouse or former spouse.

in a dissolution case as of the petition date, the community property of the spouses passes to the debtor's estate, and creditors of the debtor's former spouse participate in the distribution as holders of 'community claims.' However, if the property has been divided by a final order of the divorce court, the bankruptcy estate is bound by the terms of that order, subject to any rights which creditors may retain [under Bankruptcy Code § 548 (Fraudulent Transfers and Obligations)])."(footnotes citing foregoing authorities omitted.); *see also* Alan Pedlar, *Community Property and the Bankruptcy Reform Act of 1978*, 11 ST. MARY'S L.J. 349, 358 (1979)("[I]n a state where spouses equally or jointly manage and control their community property, the only property of either spouse that does not pass to the bankruptcy estate of an individual spouse is the separate property of the non-debtor spouse and the community property subject to sole management and control of the nondebtor spouse, to the extent that such property is not liable for an allowable claim against the debtor.")(footnote omitted); *see* H.R. REP. NO. 95-595, at 175-176 (1977) ("The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case . . . [u]nder the bill, all of the community property of the debtor, with some minor limitations, and all of the separate property of the debtor will become property of the estate available for distribution. Community creditors of both the bankrupt spouse

12

and the nonbankrupt spouse will be permitted to share in the community property, according to specified marshalling rules set out in the statute.")(footnotes omitted); Alan Pedlar, *The Implications of the New Community Property Laws for Creditors' Remedies and Bankruptcy*, 63 CAL.L.REV. 1610, 1661 (1976) (hereinafter PEDLAR).

We agree with the prevailing view that former community property which has been partitioned and classified as separate property of the debtor's former spouse under state law prior to the commencement of the case does not pass into the bankruptcy estate. Under section 541(a)(2) only "interests of the debtor and the debtor's spouse in <u>community property</u> <u>as of the commencement of the case</u>" may become part of the estate. Anderson's property interest in her separate property home was created and defined by state law prior to the commencement of this bankruptcy case. Unless the characterization of the property by state law conflicts with the Bankruptcy Code, "there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner*, 440 U.S. at 55. We see no such conflict between the plain meaning of section 541(a)(2) of the Bankruptcy Code and the classification of Anderson's home as her separate property under state law prior to the commencement of the Debtor's bankruptcy case.

The Trustee argues, as the Bankruptcy Court reasoned, that section 101(7) and section 726 of the Bankruptcy Code change the plain meaning of section 541(a)(2)(B) so that, when read together, they include the separate property of the non-debtor former spouse in the debtor's bankruptcy estate if the non-debtor's separate property is liable for a "community claim." Their reasoning is contrary to the Bankruptcy Code, however, because section 101(7) and section 726 derive their meaning by reference to section 541(a)(2), not the other way around. Section 101(7) defines "community claim" as a debt incurred during the community property regime which vests in the creditor a right to have that debt satisfied from community assets, regardless of whether there is community property in the estate as of the commencement of the bankruptcy case.[2] The outer limits of community property of the estate marked by section 541(a)(2) are thus not altered by section 101(7), which merely defines "community claim" as one for which

---

[2] Section 101(7) provides: "In this title--[] 'community claim' means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case[.]" This definition "is keyed to the liability of the debtor's property for a claim against either the debtor or the debtor's spouse. If the debtor's property is liable for a claim against either, that claim is a community claim." H.R. REP. No. 95-595 (1977); S. REP. No. 95-989 (1978). The definition of "community claim" was amended by the Senate "in order to indicate that a community claim exists whether or not there is community property in the estate as of the commencement of the case." 124 CONG. REC. H11090 (daily ed. Sept. 28, 1978); 124 CONG. REC. S17406 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini).

14

community property ("of the kind specified in section 541(a)(2)")
is liable and does not expressly or impliedly provide that a non-
debtor former spouse's separate property shall be included in the
estate or made liable for a community claim in the bankruptcy
case.[3]

Section 726(c) governs distributions in cases in which there
is both community property ("property of the kind specified in
section 541(a)(2) of this title") and non-community property in the
estate. In essence, section 726(c) creates a "sub-estate" that
calls for the segregation of community property in the estate from
other property of the estate and for the order of distribution of
the two kinds of property in payment of claims: First,
administrative expenses are paid equitably from both kinds of

---

[3]Nor can subsection (B) expand the reach of section 541(a)(2)
beyond that property which is community property at the
commencement of the case. Subsection (B) modifies section
541(a)(2), which by its plain terms is limited solely to community
property; to then find that subsection (B) expands section
541(a)(2)'s reach beyond community property would be to render the
limiting modifier of "community property" in section 541(a)(2)
meaningless. *See United States v. Shaw*, 979 F.2d 41, 44 (5th Cir.
1992). Further, the legislative history of the precursor of
subsection (B) indicates that it was solely intended to address the
unique situation whereby state statute community property is under
the sole management and control of the non-debtor spouse, yet is
still subject to community claims. *See* PEDLAR at 1663 n. 296 ("The
final clause, which passes 'other community property of the debtor
and his spouse to the extent it is liable for any allowable claim
. . .' was inserted to acquire the wife's one-half interest in the
community property which was liable for her torts under New Mexico
law . . . However, this language is retained . . . to deal with the
business interest of the non-bankrupt spouse in California and the
community property under the sole management and control of the
non-bankrupt in Texas.") (internal citations omitted) (emphasis
added).

property; Second, community claims against the debtor or the debtor's spouse are paid from community property, except such as is liable solely for the debts of the debtor; Third, community claims against the debtor, to the extent not paid under the above provision, are paid from community property that is solely liable for the debts of the debtor; Fourth, to the extent that all claims against the debtor including community claims against the debtor are not paid under the above provisions, such claims shall be paid from property of the estate other than community property of the estate; Fifth, if any community claims against the debtor or the debtor's spouse remain unpaid, they are paid from whatever property remains in the estate. *See* 11 U.S.C. § 726(c); H.R. REP. NO. 95-595, at 383-384 (1977); S. REP. NO. 95-989, at 97-98 (1978). The marshalling rules of § 726(c) apply only to property of the estate as defined under section 541 and thus the sub-estate mechanism merely defines a hierarchy of distributions from the estate -- it has no implication as to whether property is to be included in the bankrupt estate under section 541. *Id*.

Because the separate property home of Anderson, the non-debtor former spouse, was not included or owned in indivision with the property of the Debtor's bankruptcy estate, the Trustee lacked authority to sell her home as "property of the estate" under section 363(b)(1), as property of the estate in which there is an interest of "an entity other than the estate" under section 363(f),

16

or as "the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety" under section 363(h). *See* COLLIER ¶ 363.08[2].

B.

Alternatively, the Trustee argues that, as trustee of the Debtor's bankruptcy estate, he has, under the "strong-arm" provisions of section 544 of the Bankruptcy Code, the rights and powers of a bona fide purchaser of real property from the debtor to avoid any transfer of the property of the Debtor, including the transfer by partition to Anderson of the family homestead as her separate property. Section 544, in pertinent part, provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by -
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.

11 U.S.C. § 544(a)(3).

Under section 544(a)(3) the trustee has the right and power, as of the date of the commencement of the case, to avoid any lien or transfer avoidable by a hypothetical bona fide purchaser of real

17

property of the debtor as of the date of the commencement of the case. These rights and powers are conferred on the trustee by federal law. *See* COLLIER ¶ 544.02 at 544-5 (*citing Commercial Credit Co., Inc. v. Davidson*, 112 F.2d 54 (5th Cir. 1940)). The extent of the trustee's rights as a bona fide purchaser of real property, however, is measured by the substantive law of the state governing the property in question. *See Gaudet v. Babin (In the Matter of Zedda)*, 103 F.3d 1195 (5th Cir. 1997); COLLIER ¶ 544.02 at 544-5; 3 NORTON ON BANKRUPTCY ¶ 54.3 at 54-9, n. 22 (*citing In re Clifford*, 566 F.2d 1023, 1025 (5th Cir. 1978); *McKay v. Trusco Finance Co.*, 198 F.2d 431 (5th Cir. 1952)) (hereinafter NORTON). The statutory language, "without regard to any knowledge of the trustee or of any creditor" refers to actual knowledge and does not affect state laws relating to constructive notice. COLLIER ¶ 544.02 at 544-7; NORTON ¶ 54.5 at 54-17 – 54-18. The phrase has been construed by the courts not to affect actions which, under applicable nonbankruptcy law, serve to give competing claimants constructive notice of the claim. When an otherwise bona fide purchaser of real estate would be subject to a claim because of constructive notice under state law, the trustee cannot avoid the claim. *See* NORTON ¶ 54.5 at 54.18, n.67 (citing authorities); COLLIER ¶ 544.03 at 544-7. A hypothetical bona fide purchaser under section 544(a)(3) is a purchaser who under state law could have conducted a title search, paid value for the property and perfected

18

his interest as a legal title holder as of the date of the commencement of the case. *See* COLLIER ¶ 544.08 at 544-15 (*citing In re Bridge*, 18 F.3d 195 (3rd Cir. 1994)). The trustee, just as a hypothetical purchaser, is amenable to state recording statutes and other nonbankruptcy laws which would prevent him from properly perfecting transfer from the debtor at the time of the commencement of the case. *See* COLLIER ¶ 544.08 at 544-15 - 544-16; NORTON ¶ 54:5 at 54-17 — 54-18, nn. 63 - 64 (*citing Watkins v. Watkins*, 922 F.2d 1513 (10th Cir. 1991); *In re Gulino*, 779 F.2d 546, 551 (9th Cir. 1985)). Thus, although section 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, as well as other state law limitations upon bona fide third party purchaser status. *See, e.g., In re Hamilton*, 125 F.3d 292 (5th Cir. 1997); *see also* NORTON ¶ 54.5 at 54.18, n.67 (citing authorities); COLLIER ¶ 544.03 at 544-7.

Until 1980, the Louisiana Civil Code designated the husband as the "head and master" or sole manager of the community property. See SPAHT AND HARGRAVE § 5.1 at 223-234 (citing LA. CIV. CODE ANN. arts. 2404 (1870); 2373 (1825); 66 (1808)). "Doubts about the constitutionality of this discrimination against the wife were a primary motivation for the 1980 revision of the community property laws and the adoption of the current regime which gives the spouses equal management powers." SPAHT AND HARGRAVE § 5.1 at 224; *see* LA.

19

CIV. CODE ANN. art. 2346 (1980). As an important exception to the basic principle of equal management, however, Civil Code article 2347 (1980) provides that "[t]he concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables...." The purpose of Article 2347 is to "protect one spouse against solo transactions that have the potential of depleting the community--normally transfer or encumbrance of immovables." SPAHT AND HARGRAVE § 5.10 at 253. Consequently, because of Article 2347, a third person who attempts to buy real property, that the conveyance records indicate is community immovable property, from one of the spouses without the concurrence of the other cannot by the solo transfer obtain bona fide purchaser status or good title to that property. *See* SPAHT AND HARGRAVE § 5.10 at 253—257 (citing Louisiana court decisions).

New Civil Code articles were enacted in 1995 to govern the management of undivided former community property after the inter vivos termination of the community property regime. *See* 1995 La. Acts No. 433 (amending Civil Code article 2369.1 and adding Civil Code articles 2369.2—2369.8). As amended, Article 2369.1 provides that, after the termination of the community regime by a cause other than a spouse's death or the judicial declaration of a spouse's death, Articles 2369.2 — 2369.8 apply to former community property until a partition of the former community property or the death or judgment of declaration of death of a spouse. Article

20

2369.4, which prohibits a spouse's solo transfer of former community property, provides: "A spouse may not alienate, encumber, or lease former community property or his undivided interest in that property without the concurrence of the other spouse, except as provided in the following articles.[4] In the absence of such concurrence, the alienation, encumbrance, or lease is a relative nullity." Article 2369.4 was deemed necessary because "during the existence of the community regime while it may be assumed that a spouse will exercise his management powers in such a way as to promote the mutual purposes of the community regime, no such assumption exists after termination of the community regime." LA. CIVIL CODE ANN. art. 2369.4, Comment (a) (West 1999). Article 2369.4 governs "former community property that is co-owned by spouses or former spouses on or after January 1, 1996, regardless of when the community regime of the spouses or former spouses terminated." 1995 La. Acts No. 433, § 3.

On the facts of the present case, a hypothetical buyer of the real property in question from the Debtor as of the commencement of this bankruptcy case could not have achieved bona fide purchaser status. It is undisputed that: in 1989, when the Debtor and Anderson acquired the real property in their names by a deed recorded in the conveyance records of Ouachita Parish, Louisiana, a community property regime had been established by their marriage,

---

[4]None of the Civil Code Articles following Article 2369.4 is applicable to the present case.

so that the property became their community property; on January 26, 1994, the Debtor and Anderson were divorced by a judgment of the Fourth Judicial District Court for Ouachita Parish, Louisiana, which was recorded in the conveyance records of Ouachita Parish on January 27, 1994; and on June 17, 1996, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code that commenced the present bankruptcy case.

The community regime of the Debtor and Anderson was terminated by their judgment of divorce as of the date of filing of the petition in that action on May 21, 1993. LA. CIV. CODE ANN. arts. 102, 103, 159 (effective Jan. 1, 1991). The divorce judgment was recorded in the conveyance records of Ouachita Parish on January 27, 1994 and thus became effective against third persons with respect to former community immovables in that parish from the date and time of its registry. LA. CIV. CODE ANN. art. 1839 (effective Jan. 1, 1984); LA.R.S. § 9:2721.[5] Consequently, a solo transfer by the debtor to a hypothetical buyer, of the real property in question, on the June 17, 1996 bankruptcy petition date, would be a relative nullity, would not transfer valid title to such a buyer, and would not enable that buyer to obtain bona fide purchaser status. Thus, the Trustee is not authorized by section 544(a)(3)

---

[5]*See generally* W. Lee Hargrave, *Public Records & Property Rights*, 56 LA.L.REV. 535 (1996); William V. Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems*, 39 TUL.L.REV. 491 (1965).

to exercise the rights and powers of a bona fide purchaser with respect to the real property in question.

We have interpreted and applied the principles of the pertinent Louisiana Civil Code articles, other state laws, and state court decisions as we think the Supreme Court of Louisiana would. In particular, the Supreme Court of Louisiana's decision in *Camel v. Waller*, 526 So.2d 1086 (La. 1988), although decided in a factual context that arose prior to the 1980 revision of the Civil Code provisions on matrimonial regimes and the 1996 amendments concerning co-ownership of former community property, provides substantial guidance as to how that court would apply the currently applicable state law. In that case, third party purchasers of community immovables from a husband, who had been judicially separated from his wife by an unrecorded judgment, prevailed over the wife's claim for enforcement of her community rights in the property. The court held that because the separation judgment had not been recorded prior to the third party purchasers' acquisition of the property, the husband had not lost his right as head and master of the community to make a solo transfer of the community property. In a virtually unanimous opinion, the court noted:

> Elizabeth Camel[, the wife,]could have alerted third party purchasers to the newly acquired right of joint control attending her undivided co-ownership interest by recording her judgment of separation....She did not do so. Consequently, 'the judgment affecting immovables", that is, a judgment changing the husband's right to convey alone, to a right of joint control, is not 'binding on' and does not 'affect third persons'.

23

> La.Rev.Stat.Ann. § 9:2721 (West 1965). In this context Elizabeth Camel's 'claim', the right to enjoy joint control of property owned in indivision which is 'outside the public records''shall [not] be binding on or affect third persons', La.R.S. § 9:2721, and indeed, it is 'utterly null and void, except between the parties....' La.Rev.Stat. Ann. § 9:2756 (West Supp. 1988).

*Id.* at 1093 (citations in original).

Considering that: (1) the present case is amenable to the 1980 revision of the Civil Code provisions on matrimonial regimes, which replaced the husband's head and master authority with a general principle of equal management and a requirement of the concurrence of both spouses for the alienation of community immovables;[6] (2) the *Camel* court carefully noted that the 1980 revision was not applicable to the 1977 and 1978 transfers at issue in Camel; (3) the present case is governed by the new 1996 rules requiring spousal concurrence for the alienation of any interest in undivided former community property; and (4) the present case is factually distinguishable from *Camel* in that the Debtor-Anderson divorce judgment was recorded in the conveyance records in January 1994 and therefore was effective as a bar to the Debtor's hypothetical attempt to transfer the real property in question to

---

[6]*See generally* W. Lee Hargrave, *Public Records and Property Rights*, 56 LA.L.REV. 535, 550 (Spring 1996) ("under current law, facts similar to *Camel v. Waller* will result in annulment of the transfer upon the request of the non-consenting spouse."); L.C. Friedmann, *Camel v. Waller: A Conflict Between the Laws of Community Property and the Public Records Doctrine*, 63 TUL.L.REV. 193, 198 (1988) ("Because the head and master rule has been eliminated from Louisiana law, the application of the *Camel* analysis will be limited in the future.").

a third person purchaser on the June 17, 1996 date of the bankruptcy petition, we believe that the Louisiana Supreme Court would resolve the conflict here, as we have, in favor of the non-debtor former spouse and against the hypothetical third party purchaser.

III.

For the reasons assigned, we conclude that (1) the real property in question became Anderson's separate property home through the partition of the former community property home before the commencement of the bankruptcy case and therefore is not property of the Debtor's bankruptcy estate defined by section 541(a)(2); and (2) the trustee is not entitled to obtain the status of a bona fide purchaser with respect to the real property in question under section 544(a)(3). Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED to the district court, which is instructed to REVERSE the bankruptcy court's judgment and REMAND the case to the bankruptcy court for further proceedings consistent with this opinion.